# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL DUNKLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 07-CV-128-WDS |
| | ) |
| CONTEMPRI HOMES, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendants' motion to dismiss plaintiff's third amended complaint (Doc. 41), to which plaintiff has filed a response (Doc. 43), and defendants a reply (Doc. 45). Defendants seek to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), asserting that it fails to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff's amended complaint (Doc. 37) seeks recovery from Contempri Homes, his employer, as well as Contempri Homes employees, Rick Powell, Jeremy Wildermuth, and John Murphy.[1] Count I claims plaintiff de facto demotion under Title VII and 42 U.S.C. § 1981. Count II alleges a racially hostile work environment in violation of Title VII and 42 U.S.C. § 1981, and Count III seeks recovery for battery and negligent supervision under Illinois state law.

Contempri Homes builds and delivers manufactured homes. Plaintiff alleges that he is

---

[1] Jeremy Wildermuth, a Contempri Homes employee who is named in the heading of plaintiff's third amended complaint, is not identified as a defendant in the text of the complaint except in regards to Count III. However, plaintiff makes no reference to Wildermuth and drops his name from the heading of plaintiff's response to defendants' motion to dismiss.

the only non-temporary employee at Contempri Homes who is black, and that based on his race he was routinely harassed by his co-workers. He alleges that he worked at Contempri in the positions of flagger,[2] as a set-up worker,[3] and also worked in the manufacturing plant. During the time in question, Contempri employed three truck drivers to haul the homes to their destinations. Plaintiff alleges that as of the Summer of 2005, he was the only black flagger, and that one of the truck drivers, Presswood, refused to allow plaintiff to flag for him solely because he was black, and that management did not intervene in Presswood's decision.

Plaintiff also alleges that as a result of a series of incidents, all involving discrimination based upon his race, he was "suspended" or removed from job opportunities at Contempri. He avers that in March of 2005, after a minor argument with a co-worker, Lisa Hill, he was suspended from work inside the manufacturing plant.[4] He alleges that in July of 2005 he was "suspended" from set-up work after a dispute with defendant Murphy. Although neither of these suspensions resulted in loss of work, they did result in a reduction in pay.

He also avers that due to a series of incidents involving defendant Powell in 2005, he was unable to continue to act as a flagger, and was reduced to part time yard work only. The Powell incidents included an attempt in November, 2005 when Powell is alleged to have driven plantiff off the road and forced him into a ditch. Another allegedly occurred in February of 2006, when Powell is alleged to have driven his truck at plaintiff while plaintiff was flagging, causing

---

[2]"Flagging" requires driving a small truck to escort the larger trucks that haul the homes to their destinations. Flagging is alleged to be a desirable position because of the opportunities for overtime pay.

[3]"Set-up" employees travel with a team of employees to set-up the manufactured home at the designated site.

[4]He also alleges that a few days after this incident, defendant Murphy started a false rumor that plaintiff had, during this argument, threatened Hill.

2

plaintiff to seek refuge in the passenger compartment of his own truck. Powell then allegedly rammed plaintiff's flag truck. Thereafter, plaintiff refused to flag for Powell and was reduced to yard work.

Plaintiff timely filed two charges with the EEOC and received right to sue letters in February and November of 2006. He filed this action in February of 2007.

## LEGAL STANDARD

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must assume that all facts in the complaint are true and construe all allegations in a light most favorable to the plaintiff. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hernandez v. City of Goshen, Ind.*, 324 F.3d 535, 537 (7th Cir. 2003). Dismissal is appropriate only if it appears beyond a doubt that no relief may be granted under any set of facts that could be proved consistent with the allegations in the complaint. *See Conley*, 355 U.S. at 45-46; *Veazy Commc'ns & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999). Although a plaintiff need not set out in detail the facts upon which a claim is based, the plaintiff must allege sufficient facts to outline a cause of action. *See Stevens v. Umsted*, 131 F.3d 697, 700 (7th Cir. 1997).

## ANALYSIS

A.  **COUNT I**

Defendants argue that all of the claims in Count I are time barred pursuant to 42 U.S.C. § 2000e-5(f)(1), and therefore Count I is subject to dismissal, in its entirety. Count I alleges defacto demotion and racial discrimination comprised of discrete acts. 42 U.S.C. § 2000e-5(f)(1) precludes recovery for discrete acts of discrimination or retaliation alleged under Title VII that occur outside the statutory time period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). It is well settled that "a litigant has up to . . . 300 days after the unlawful

3

practice happened to file a charge with the EEOC." *Morgan*, 536 U.S. at 109-10 (citing 42 U.S.C. § 2000e-5(e)(1)), and that a litigant is required, thereafter, to file his complaint in federal court within 90 days of receiving his right-to-sue letter from the EEOC, 42 U.S.C. § 2000e-5(f).

In Illinois, a plaintiff "must file a charge with the EEOC within 300 days of the time that his action began to accrue." *Broadwater v. Heidtman Steel Prods., Inc.*, 182 F.Supp.2d 705, 716 (S.D. Ill. 2002). The plaintiff's action in this case is, therefore, limited to, "actions taken by defendants within 300 days prior to . . .the date [plaintiff] filed the EEOC charge from which he timely filed suit herein. . . ." *Id.*

"In order to maintain a claim under Title VII, a plaintiff must file charges with the EEOC, receive a Right-to-Sue Letter, and act upon it. If these jurisdictional elements are not met, the action will be dismissed." *EEOC v. Harris*, 10 F.3d 1286, 1288 n.3 (7th Cir. 1993). Section 2000e-5 provides that these "administrative requirements" are "'conditions precedent,' similar to statutes of limitations, which are subject to equitable modification." *Broadwater*, 182 F. Supp.2d at 716 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Plaintiff argues that the time bar under 42 U.S.C. § 2000e-5 amounts to an affirmative defense, and, therefore, is too prejudicial to satisfy a Rule 12(b)(6) motion, however, as previously noted, the time bar is jurisdictional. Plaintiff also contends that the defendants' use of plaintiff's right-to-sue letters as evidence is improper, as these documents fall outside of the pleadings and were not mentioned in plaintiff's complaint. Plaintiff is correct that he "is under no obligation to attach to [his] complaint documents upon which [his] action is based." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (citing 5 Charles A. Wright & Arthur A. Miller, *Federal Practice and Procedure* § 1327 at 762-63 (2 ed., 1990)). However, "a defendant may introduce certain pertinent documents if the plaintiff failed to do so." *Id.*

"Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Id.*

As a condition precedent, a time bar is a sufficient basis on which to grant a motion to dismiss under Rule 12(b)(6). Since possession of a right-to-sue letter from the EEOC is a necessary condition precedent for plaintiff to bring his suit, it is proper for defendants to attach plaintiff's right-to-sue letters to their motion as they are central to defendant's motion as well as plaintiff's claim. Furthermore, absent his second right-to-sue letter, plaintiff cannot maintain his suit.

In this case, plaintiff filed two separate charges with the EEOC. His first charge was filed in September of 2005, and alleged racial discrimination for events that had occurred up to that time. Plaintiff received a right-to-sue letter on February 24, 2006, directed to the claims raised in the September 2005 charge. The record is clear that he did not file suit within 90 days of receiving that letter.

Some nine months later, plaintiff filed a new charge with the EEOC on November 21, 2006. This charge raised further claims of racial discrimination by the defendants, and attempted to charge that these new acts of discrimination were part of a continued series of actions by the defendants. Notably, the only new act of discrimination in the second EEOC charge involved the last incident with Powell, the alleged battery that led to plaintiff's constructive demotion. The EEOC issued a right-to-sue letter on those claims on November 29, 2006.

Although the plaintiff attempts to preserve his harassment claims raised in the September 2005 EEOC complaint, the record is clear that he *did not* file an action in this Court in a timely fashion as to those claims. Therefore, under *Broadwater* this Court can only consider defendants' conduct that occurred in the 300-day-period before he filed his second EEOC complaint in

November of 2006.  The only claimed act of discrimination that occurred within that 300 day period is the claim of constructive demotion that occurred as a result of the alleged battery that occurred on February 15, 2006.

Therefore, the Court **FINDS** that all claims in Count I arising from incidents occurring before January 25, 2006 are time-barred, leaving only plaintiff's claim of constructive demotion that stemmed from the February 2006 Powell incident.

The defendant seeks dismissal of plaintiff's constructive demotion claim pursuant to Fed. R. Civ. P. 12(b)(6).   The Seventh Circuit has held that the legal test for constructive discharge also governs constructive demotion.  *See Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 1999).  "Establishing constructive discharge is a two-step process.  First, a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign.  Second, the conditions must be intolerable because of unlawful discrimination." *Id.* at 877.  Intolerable working conditions rising to the level of de facto demotion may be indicated by "a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Piech v. Arthur Anderson & Co.*, 841 F. Supp. 825, 833 (N.D. Ill. 1994) (citing *Crady v. Liberty Nat'l Bank & Trust, Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Plaintiff has failed to state a claim for de facto demotion because the incident occurring on February 15, 2006, is insufficient alone to establish working conditions so intolerable that a reasonable person would feel compelled to resign.  The record is clear that plaintiff voluntarily chose not to flag for Powell.  Given that, the Court **FINDS** that plaintiff has not alleged a claim sufficient to support constructive discharge and Count I is, accordingly **DISMISSED.**

### B. COUNT II

In Count II, plaintiff alleges that he was subject to a racially hostile work environment perpetuated by his co-workers, who used racial epithets and stereotypes and spread a false and racially suggestive rumor, and by Contempri management and truck drivers, who discriminated against plaintiff based on his race. Defendants respond that Count II is time barred pursuant to 42 U.S.C. § 2000e-5(f)(1). To support a hostile work environment claim, unlike discrete acts of discrimination, plaintiff may rely on claims otherwise time-barred to establish a racially hostile work environment so long as the incident occurring on February 15, 2006 contributed to the hostile work environment.

Hostile work environment claims involve "repeated conduct." *Morgan*, 536 U.S. at 115. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* For these reasons, the Supreme Court concluded in *Morgan* that, unlike discrete acts of discrimination, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile work environment takes place within the statutory time period" of 42 U.S.C. § 2000e-5(e)(1). *Id.* at 105. "In order for a charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118.

In order to claim that a hostile work environment exists, a plaintiff must allege facts indicating that he was subject to conduct "so severe and persuasive as to alter the condition of the employment and create an abusive work environment." *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004) (citing *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 462-63 (7th

Cir. 2002)). "In determining whether an actionable hostile work environment claim exists, [the Court] look[s] to 'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Morgan*, 536 U.S. at 116 (quoting *Harris v. Forklift Sys., Inc.*, 519 U.S. 14, 23 (1993)). Applying this standard, the Court **FINDS** that plaintiff has alleged sufficient facts to survive a motion to dismiss his hostile work environment claim and, therefore, defendants' motion to dismiss Count II is **DENIED**.

### C. COUNT III

In Count III, plaintiff alleges that Powell committed the state tort of battery by ramming his vehicle into plaintiff's flagging truck and, because Powell was working within the scope of his employment at the time of the incident, Contempri Homes is liable for battery under the doctrine of *respondeat superior*. Plaintiff further alleges that Contempri Homes is liable under the doctrine of negligent supervision for this act, since Powell allegedly previously attempted battery against plaintiff, and Contempri management, specifically Wildermuth, took no action to discipline Powell or protect plaintiff.

Defendants move to dismiss Count III because: (1) plaintiff has failed to state a claim for battery; (2) Count III alleges a state law claim that lacks subject matter jurisdiction; (3) the Illinois Workers' Compensation Act is the exclusive remedy for negligent supervision; and (4) both claims are preempted by the Illinois Human Rights Act.

#### 1. Battery

##### a) Contempri Homes

The doctrine of *respondeat superior* is unavailable to overcome the preemptive effect of

8

the Illinois Workers' Compensation Act (IWCA). *McPherson*, 379 F.3d at 442. In *Meerbrey v. Marshall Field & Co.,* the Illinois Supreme Court held that the IWCA's "exclusivity provisions bar employees from bringing common law actions against their employers based solely upon the doctrine of *respondeat superior*." 564 N.E.2d 1222, 1227 (Ill. 1990) (citing *Collier v. Wagner Casting Co.*, 408 N.E.2d 198 (Ill. 1980). Under the IWCA, an employee is barred from bringing a common law cause of action against his employer unless the employee proves: (1) the injury was not accidental; (2) the injury did not arise from his or her employment; (3) the injury was not received during the course of employment; or (4) the injury was not compensable under the IWCA. 564 N.E.2d at 1226. Injuries intentionally inflicted by a co-worker are considered "accidental" within the employer's point of view and therefore fall under the exclusive protection of the Act. *Id.*; *see also McPherson*, 379 F.3d at 442-43. A plaintiff may only avoid preemption if he establishes that the employer itself "committed, commanded, or expressly authorized" the torts alleged. *Meerbrey*, 564 N.E.2d at 1227.

Here, plaintiff fails to allege that Contempri Homes committed, commanded, or expressly authorized the battery committed by Powell. In fact, plaintiff relies solely on the doctrine of *respondeat superior* to establish his claim of battery against Contempri Homes. Therefore, the Court **FINDS** that plaintiff's claim of battery against Contempri Homes fails to state a claim upon which relief can be granted, and is subject to dismissal.

   **b)**   **Defendant Powell**

Unlike an intentional tort claim against an employer, the IWCA "does not bar an employee from bringing a common law cause of action against a fellow worker for intentional torts committed by the fellow worker." *Meerbrey*, 564 N.E.2d at 1230. Therefore, plaintiff may maintain his battery claim against Powell so long as he has pled sufficient facts to establish a

9

cause of action for battery under Illinois law.

To state a cause of action for battery in Illinois, a plaintiff must allege facts showing that the defendant (1) intended to cause a harmful or offensive contact or an imminent apprehension of such a contact, and (2) a harmful contact directly or indirectly resulted. *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. 1995) (citing Restatement Second of Torts, § 13 (1965)). In this complaint, plaintiff alleges that Powell either intended to hit plaintiff's truck and cause plaintiff harm or intended to and acted to frighten plaintiff in such a way so as to put him in imminent fear of serious harm. Plaintiff also alleges that a harmful contact indirectly resulted when Powell's truck directly hit plaintiff's truck while plaintiff sat helplessly inside. Thus, plaintiff has alleged facts sufficient to survive a motion to dismiss on this issue.

Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiff's claim in Count III against Contempri Homes for battery, but **DENIES** defendants' motion to dismiss as to plaintiff's claim of battery against defendant Powell.

### 2. Negligent Supervision Claims

The Illinois Human Rights Act (IHRA), 775 ILC 5/1-101, preempts state tort claims that are "inextricably linked" to allegations of civil rights violations. *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002). In *Maksimovic v. Tsogalis*, the Illinois Supreme Court held that a plaintiff must establish the necessary elements of a tort independent of any legal duties created by the IHRA in order to avoid preemption. 687 N.E.2d 21, 22 (1997). Therefore, "the distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached. The conduct at issue must be actionable independent of the IHRA." *Griffin v. Sutton Ford, Inc.*, 452 F. Supp.2d 842, 845 (N.D. Ill. 2006) (citing *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 603 (7th Cir. 2006)).

Negligent supervision is a distinct claim independent of other tort claims. *Young v. Lemons*, 639 N.E.2d 610, 612-13 (Ill. App. Ct. 1994). In *Griffin v. Sutton Ford, Inc.*, the district court held that an employer may have duties to protect its employees, such as the duty of negligent supervision, that fall outside the IHRA. 452 F.Supp.2d at 846. However, in *Coleman v. Joliet Junior College*, the district court dismissed a plaintiff's negligent supervision claim where it was "based only on the very allegations that support his Title VII claim." 2006 WL 3534417 *3 (N.D. Ill. 2006) ("[Plaintiff] does not offer any new action or facts that allow us to conclude that there may be some independent basis that [defendant] is liable for negligent supervision/retention.").

Like those in *Coleman*, plaintiff's allegations of negligent supervision against defendants Contempri Homes, John Murphy, and Jeremy Wildermuth are "inextricably linked" with plaintiff's racially hostile work environment claim. In his complaint, plaintiff alleges that Contempri Homes and its management are liable for negligent supervision because they were aware of Powell's previous assault against plaintiff and repeatedly took no action to discipline Powell or protect plaintiff. Plaintiff bases Count II, his racially hostile work environment claim, on essentially the same facts, and, therefore, these state law claims are preempted by the federal law claims in Count II. Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiff's negligent supervision claims in Count III against Contempri Homes, John Murphy, and Jeremy Wildermuth.

## **CONCLUSION**

Upon review of the record, the Court **GRANTS** in part and **DENIES** in part defendants' motion to dismiss (Doc. 41). The Court **GRANTS** defendants' motion with respect to Count I, alleging de facto demotion, and **DISMISSES** Count I in its entirety.

11

The Court **DENIES** defendant Powell's motion to dismiss Count II.

The Court further **GRANTS** defendant Contempri Home's motion to dismiss plaintiff's claims for battery, under a *respondeat superior* theory, and for negligent supervision in Count III. The Court **DENIES** defendant Powell's motion to dismiss plaintiff's claims in Count III for battery.

The Court **DENIES** as moot defendant's prayer for a more definite statement as to Count III.

**IT IS SO ORDERED.**

**DATED: September 2, 2008.**

                                       **s/ WILLIAM D. STIEHL**
                                            **DISTRICT JUDGE**