# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL DUNKLIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 07-CV-128-WDS ) |
| CONTEMPRI HOMES, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendants' joint motion for summary judgment (Doc. 55), to which plaintiff has filed a response (Doc. 61).[1] Also before the Court is defendants' joint motion to strike (Doc. 65), to which plaintiff has filed a response (Doc. 69). Defendants seek summary judgment pursuant to Federal Rule of Civil Procedure 56.

---

[1] On September 20, 2007, Magistrate Judge Philip M. Frazier admonished plaintiff for his failure to comply with the Federal Rules of Civil Procedure. Counsel for the plaintiff has stretched the limits of the Federal Rules of Civil Procedure, the Local Rules of the Southern District of Illinois, and now this Court's patience. Plaintiff's strategy for defeating defendant's motion for summary judgment is unnecessarily burdensome from the standpoint of judicial economy. Plaintiff's response to defendants' motion for summary judgment is replete with citations to his 75-page "Statement of Material Facts." In turn, plaintiff's "Statement of Material Facts" is rife with citations to the plaintiff's 54-page, self-serving Affidavit, but largely devoid of any citations to plaintiff's sworn deposition in this case. Rather than citing to plaintiff's sworn deposition, counsel for plaintiff leads this Court through a series of confusing and unnecessary stops at his "Statement of Material Facts," and his "Affidavit," both of which contain "factual" allegations that should have been properly vetted under oath by both parties during plaintiff's sworn deposition. While the Court acknowledges that, due to the complexity of the issues presented in this case, making a "short, concise statement of the party's position" is difficult, counsel has only made that process more difficult by adding layers of duplicative and unnecessary material.

## BACKGROUND

Plaintiff's underlying claim arises from several alleged acts of racial discrimination spanning from March of 2005 until February of 2006, including the following: (1) using racial stereotypes and name-calling; (2) attacking plaintiff physically based on race; (3) spreading an unsubstantiated and racially suggestive rumor; (4) denying plaintiff short-trip flagging opportunities based on race; (5) denying plaintiff long-haul flagging opportunities based on race.

On November 8, 2007, plaintiff, Paul Dunklin, filed a three-count complaint alleging: (1) de facto demotion by Contempri Homes (Count I); (2) racially hostile work environment by all defendants (Count II); and (3) battery and negligent supervision by all defendants (Count III). In an Order dated September 2, 2008, the Court dismissed plaintiff's claim for de facto demotion (Count I) and plaintiff's claim for battery and negligent supervision against Contempri Homes (Count III). The Court has allowed plaintiff to proceed on his hostile work environment claim (Count II) and on his battery claim against defendant Powell (Count III).

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## ANALYSIS

**I. COUNT II**: **Hostile Work Environment**

Defendants seek summary judgment on Count II of plaintiff's third amended complaint and argue that plaintiff has failed to establish the requisite elements of a hostile work environment claim. The Court notes that plaintiff has attempted to support his hostile work environment claim with time-barred allegations.[2] Before addressing defendants' arguments with respect to the substantive elements of plaintiff's claim, the Court will consider whether, or to what extent, plaintiff's allegations of racial discrimination are time-barred.

**A. Statute of Limitations**

The Supreme Court has concluded that, in cases involving hostile work environment claims alleged under a continuing violation theory, courts may consider evidence falling outside the statutory time period, so long as an act contributing to that hostile work environment takes place within the statutory time period of 42 U.S.C. § 2000e-5(e)(1). *AMTRAK v. Morgan*, 536 U.S. 101, 105 (2002). "A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 126.

Plaintiff has alleged at least one act of discrimination that occurred within the statutory

---

[2]As the Court and the parties are well-aware by now, "a litigant has up to 180 or 300 days after the unlawful practice happened to file a charge with the EEOC." *AMTRAK v. Morgan*, 536 U.S. 101, 109-10 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)). In Illinois, a plaintiff "must file a charge with the EEOC within 300 days of the time that his action began to accrue." *Broadwater v. Heidtman Steel Prods., Inc.*, 182 F. Supp.2d 705, 716 (S.D. Ill. 2002). Because plaintiff filed his second charge with the EEOC on November 21, 2006, any discrete acts of discrimination occurring before January 25, 2006 would be time-barred. On January 29, 2009, President Obama signed into law the Lilly Ledbetter Fair Pact Act of 2009. Pub. L. No. 111-2. Although that Act may extend the statute of limitations with respect to wage discrimination claims in some cases, that Act does not affect the statute of limitations with respect to the hostile work environment claims now pending before the Court.

time period.³ The Seventh Circuit has stated that plaintiff may obtain relief for an otherwise time-barred act by "linking it with an act that is within the limitations period" such that the linked acts are "related closely enough" to establish a sufficient nexus. *Koelsch v. Beltone Elects. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995).

But the Seventh Circuit does not allow unlimited "reaching back" to otherwise time-barred *discrete acts* to form a continuing violation theory.⁴ In determining whether plaintiff's continuing violation claim is actionable, the Court will consider the following factors: (1) whether the acts involve the same subject matter; (2) the frequency with which the acts occur; and (3) the degree of permanence of the alleged acts of discrimination that should trigger an employee's awareness and duty to assert his rights. *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002); see also *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir. 1992).

*1. Acts that extend the Statute of Limitations*

Upon review of the record and of the factors set forth in *Tinner*, 308 F.3d at 708, the Court **FINDS** that the following discrete acts of alleged discrimination cannot be linked together to form a single chain or single course of conduct so as to extend the statute of limitations: (1) Fisher, Sullivan, and Brand's use of the terms "nigger-rigging" and "boy" in the presence of

---

³ Plaintiff alleges that, on February 15, 2006, defendant Powell assaulted and battered him with his hauling truck. Because this alleged act of discrimination occurred after January 25, 2006, it falls within the statutory time period and is not time-barred.

⁴Plaintiff's claim falls under the third theory of a continuing violation claim, where discrete acts of discrimination are alleged to be part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period. *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002). Because discrete, discriminatory acts occur on the day they happen, only those otherwise time-barred discrete acts that can be linked directly to the non-time-barred discrete acts can form the basis of a continuing violation claim. *Amtrak*, 536 U.S. at 109-12.

plaintiff[5]; (2) the Lisa Hill incident of March 2005[6]; (3) Wildermuth and Presswood's denial of short- and long-term flagging assignments for plaintiff.[7]

Plaintiff demonstrated that he understood the discriminatory nature of each one of these

---

[5] Fisher, Sullivan, and Brand's use of the term's "nigger rigging" and "boy":
   (a) <u>Subject Matter</u>: Fisher, Sullivan, and Brand used verbal harassment, whereas defendant Powell demonstrated physical aggression towards plaintiff. Plaintiff does not allege that Fisher, Sullivan, and Brand were involved directly with the alleged assault occurring on February 15th.
   (b) <u>Frequency</u>: Neither party has established when, or the frequency with which, these statements were made. But the fact that Fisher, Sullivan and Brand stopped making these statements once confronted by plaintiff suggests that they were not closely related in time to the non-time-barred act. Therefore, these statements were isolated in nature, *See Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998).
   (c) <u>Permanence</u>: In addition to raising these issues with the EEOC in his first charge, plaintiff also confronted his co-workers regarding their use of these terms, as well as his managers. Plaintiff understood these acts to be discriminatory when they happened.

[6] The Lisa Hill Incident: Plaintiff alleges that, following an argument that plaintiff had with Lisa Hill, his white, female co-worker, an unidentified Contempri Homes employee perpetuated a rumor that plaintiff wanted to slit Lisa Hill's throat with a knife.
   (a) <u>Subject Matter</u>: Spreading a rumor is different from the physical confrontation that Powell had with plaintiff on February 15, 2006. None of the people allegedly involved with perpetuating the rumor–John Murphy, Dave Cotton, and Lisa Hill–participated in the alleged assault involving defendant Powell.
   (b) <u>Frequency</u>: This rumor was allegedly created and perpetuated within a short time period over a few days in March of 2005. Almost an entire year passed between those acts and the non-time-barred event, which occurred in February of 2006.
   (c) <u>Permanence</u>: In addition to addressing this issue in his first charge with the EEOC, this act was coupled with an adverse employment decision: indefinite suspension. Plaintiff alleges that the indefinite suspension became, in effect, permanent, which further supports plaintiff's recognition of his duty to assert, or lose, his rights.

[7] Wildermuth and Presswood's denial of short- and long-term flagging assignments to plaintiff:
   (a) <u>Subject Matter</u>: Whereas Powell physically assaulted plaintiff while on a flagging assignment, Wildermuth and Presswood allegedly denied plaintiff the opportunity to flag in the first place.
   (b) <u>Frequency</u>: Presswood's denial of short-term flagging opportunities for plaintiff was an isolated occurrence. Once Presswood explained to plaintiff that he preferred to use Dave Thomas as his flagger, plaintiff did not again ask to flag for Presswood. Similarly, the record does not support an inference that Wildermuth denied plaintiff long-term flagging opportunities on a continuing basis. Although plaintiff was denied two such opportunities in 2004 and 2005, he was also given three such opportunities in the summer of 2005, making any alleged denials isolated, discrete acts. Nearly seven full months elapsed between Presswood and Wildermuth's alleged denials, occurring as late as July of 2005, and Powell's assault in February of 2006.
   (c) <u>Permanence</u>: In addition to including these allegations in his first EEOC charge, plaintiff understood the severity of this employment action because it meant that he had one less person for whom he could provide flagging services.

acts when they occurred by including allegations of each in the first charge of discrimination that he filed with the EEOC on December 6, 2005. Plaintiff did not need future acts of discrimination to understand that these predicate acts were discriminatory themselves. Plaintiff, therefore, cannot now reach back to these three time-barred acts and link them with the February 15, 2006 assault in an attempt to circumvent the statute of limitations.

*2. Acts that do not extend the Statute of Limitations*

Upon review of the record and of the factors set forth in *Tinner*, 308 F.3d at 708, the Court **FURTHER FINDS** that the following discrete acts of alleged discrimination can be linked into a single chain or single course of conduct with the alleged February 15, 2006 assault so as to extend the statute of limitations: (1) the alleged April 2005 assault; (2) the alleged November 2005 assault.

These acts satisfy all of the elements set forth in *Tinner*, 308 F.3d at 708. Each involves the same type of alleged discrimination, e.g., racial discrimination, which was carried out in a similar manner or act, physical force, and involved the same two people, defendant Powell and plaintiff, thus satisfying the subject matter factor. *Id.* Although these acts occurred over the course of more than an entire year, at least one act occurred every four or five months, which satisfies the frequency factor. *Id.* Finally, plaintiff did not understand the permanence of these acts until Powell repeatedly exhibited physical aggression against him, as demonstrated by the fact that plaintiff did not include allegations of Powell's actions in his first charge with the EEOC. In addition, Powell's actions were not coupled with adverse employment actions, like the alleged acts of discrimination involving Lisa Hill and John Murphy, which minimized their degree of permanence at the time they occurred.

Having limited plaintiff claims to those involving only defendant Powell, the Court now

returns to defendants' motion for summary judgment on the merits of plaintiff's hostile work environment claim.

### B. Racially Hostile Work Environment

Defendants argue that plaintiff has not created a genuine issue of fact regarding whether defendant Powell assaulted plaintiff on the basis of plaintiff's race. Whether a hostile work environment exists is a question of law. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). To establish a claim for a hostile working environment based on race, an employee must show that (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive working environment that seriously affected his psychological well-being; and (4) there is a basis for employer liability. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004); *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004). Therefore, the sole issue before the Court is whether the three alleged acts of discrimination[8] making up plaintiff's continuing violation claim were motivated by plaintiff's race.

Plaintiff has not offered any direct evidence to establish that defendant Powell allegedly

---

[8] In April of 2005, plaintiff and his white co-worker, Reichman, were changing a flat tire on a semi-truck carrying a pre-manufactured home. Plaintiff, who was operating the jack primarily, attempted to dislodge a wheel nut from an air gun when Powell began yelling and cursing at plaintiff, stating something like, "Get your head out of your ass." Plaintiff said, "I'm tired of you cursing at me," after which Powell balled up his fists and charged at plaintiff, calling him a "motherfucker." Wildermuth stepped in and restrained Powell. Powell later explained that he was concerned for plaintiff's safety because, if the proper procedure is not followed, the lug nuts or spacers can shoot off of the tires like bullets when forced under the extreme pressure on the tires caused by the weights of the home.
In late October or early November of 2005, plaintiff was assigned to flag for Powell, when they were executing a standard passing maneuver as they entered Interstate 64 from Highway 127. Plaintiff alleges that he pulled onto the shoulder of the entrance ramp to make space for Powell to pass. Plaintiff alleges that Powell, as Powell attempted to pass him on the ramp, was actually driving towards him on the shoulder of the road, at which point plaintiff drove his flag truck onto the upper rim of the ditch to avoid being hit.

assaulted plaintiff because of his race. But the Seventh Circuit has ruled that, even when proceeding by the direct method of proof, plaintiff may use circumstantial evidence to establish his hostile work environment claim. *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903 (7th Cir. 2006).[9] Accordingly, this Court must consider whether the record supports an inference that defendant Powell discriminated against plaintiff on the basis of plaintiff's race. *Hrobowski*, 358 F.3d at 476; *Williams*, 361 F.3d at 1029.

The conduct about which plaintiff complains must have a racial character or purpose to support a hostile work environment claim. *Hardin*, 167 F.3d at 345. While plaintiff need not prove that this conduct was explicitly racial to demonstrate a hostile work environment, "it is equally true that not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863-64 (7th Cir. 2005).

Plaintiff offers nine reasons to support an inference that defendant Powell assaulted him on the basis of his race in April of 2005.[10] Plaintiff alleges that Powell yelled at him while he

---

[9] As the *Sylvester* court stated:
> A case of discrimination can . . . be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction: "a number of weak points can add up to strong proof." *Mataya v. Kingston*, 371 F.3d 353, 358 (7th Cir. 2004).

*Sylvester*, 453 F.3d at 903.

[10] Summarized briefly, plaintiff's nine reasons that Powell was motivated by race are as follows: (1) Reichman, and not plaintiff, was taking the lug nuts and spacers off of the tires, whereas plaintiff was operating the jack. Powell told plaintiff, but not Reichman, who is white, to "get your head out of your ass"; (2) Powell had not previously explained to plaintiff the proper tire-changing procedure; (3) Powell was not responsible for instructing employees on proper tire-changing procedure; (4) Mr. Dutton, the man responsible for teaching flaggers about the proper tire-changing procedure, never expressed any safety concern about the lug nuts and spacers shooting off of the tires like bullets; (5) Plaintiff had neither experienced nor heard of anyone else experiencing the lug nuts and spacers shooting off tires like bullets; (6) Powell had not previously shown concern for plaintiff's safety; (7) Powell contradicted his explanation by displaying physical aggression towards plaintiff; (8) Plaintiff was never instructed by

8

was changing a tire, but that Powell did not yell at Reichman, plaintiff's white co-worker who was helping plaintiff change the tire. Plaintiff contends that an inference of racial discrimination can be reasonably drawn from these facts. The remainder of plaintiff's list attempts to establish that Powell's explanation for his aggressive behavior towards plaintiff was pretextual.[11] With respect to the alleged assaults occurring in November of 2005 and February of 2006, plaintiff relies solely on the racial animus that he believe permeated the April 2005 incident to establish racial motivation. Therefore, plaintiff has truly offered only one inference, supported by circumstantial evidence, to establish that plaintiff was motivated by racial animus in confronting plaintiff in April of 2005, November of 2005, and February of 2006.

Looking at the language that Powell used, there is nothing inherently racial about his comments to plaintiff. *Hardin*, 167 F.3d at 345. (stating that there was nothing inherently racial about the defendant saying to his co-worker, the plaintiff, "[g]et your head out of your ass"). Further, plaintiff does not allege that defendant Powell ever used a racial slur in plaintiff's presence or referred to plaintiff in a *racially* derogatory manner. Nor is there anything inherently racial about Powell's actions. A co-worker can express his frustrations and criticisms of another employee's work, even if unfounded and stated aggressively, without raising an inference of racial discrimination.

---

Contempri Homes to recognize this safety concern; (9) The tire plaintiff was changing was flat and was not touching the ground, which eliminated the "gravitational pressure between it and the ground."

[11] Although not a part of plaintiff's list, plaintiff also argues that Powell possessed built up racial tension towards plaintiff as a result of the Lisa Hill incident, which occurred just one month earlier. As the Court has previously determined, the Lisa Hill incident was an isolated, discrete act that is now time-barred and is not part of a pattern of discrimination that Powell's conduct continued. Further, "'[t]he mere fact that one event preceded another does nothing to prove that the first event caused the second'. . . ." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006)(quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)). Therefore, the Lisa Hill incident is not relevant background evidence that informs this Court's understanding regarding Powell's conduct. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

Besides alleging that Powell did not also yell at plaintiff's white co-worker, Reichman, in April of 2005, plaintiff has not made any meaningful attempt to compare his situation with that of similarly situated, non-African-American employees of Contempri Homes. *Beamon*, 411 F.3d at 863-64. Plaintiff has not made any allegations with respect to Powell's treatment of other flaggers while on job sites with Contempri Homes.

Simply put, the record does not support an inference that Powell was motivated by plaintiff's race in confronting him in April 2005, when viewed within the totality of the circumstances. Although plaintiff is African-American, without more, the Court cannot ascribe discriminatory motivation to Powell's actions based on plaintiff's perception that Powell was so motivated, *Beamon*, 411 F.3d at 863-64, and the record simply does not support an inference that Powell's conduct was connected to plaintiff's race. *Id.*; *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004). Therefore, the Court **FINDS** that plaintiff has failed to create a genuine issue of fact on the issue of whether he suffered harassment in the workplace based on his race.

## **CONCLUSION**

Upon review of the record, the Court **GRANTS** defendants' joint motion for summary judgment (Doc. 55) in favor of defendants and against plaintiff on Count II of the Third Amended Complaint (Doc. 37). The Court notes, therefore, that plaintiff's claim against defendant Powell for assault and battery (Count III) is the only remaining claim in this case. Although the Court is not unsympathetic to the treatment that plaintiff received from defendant Powell, the Court also cannot find racial discrimination on the basis of such scant evidence. When stripped of the extraneous events that plaintiff attempts to use to color this Court's perception of Powell's actions, plaintiff's claim amounts to little more than a garden variety torts claim for assault and/or battery. Plaintiff's attempt to link Powell's alleged assaults with time-

barred events is unfounded on those grounds. Simply put, the record does not support an inference that defendant Powell discriminated against plaintiff on the basis of plaintiff's race. Defendants' joint motion to strike (Doc. 65) is **DENIED** as moot.

**IT IS SO ORDERED.**

**DATED: February 25, 2009.**


                                       **s/ WILLIAM D. STIEHL**
                                             **DISTRICT JUDGE**